**Francis RODEN, Petitioner and Appellant,**

v.

**Herman SOLEM, Respondent and Appellee.**

**No. 15931.**

Supreme Court of South Dakota.

Argued March 23, 1988.

Reassigned Aug. 17, 1988.

Decided Nov. 9, 1988.

Rehearing Denied Dec. 5, 1988.

---

Richard Braithwaite of Braithwaite Law Offices, Sioux Falls, for petitioner and appellant.

Frank Geaghan, Asst. Atty. Gen., Pierre, for respondent and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

MILLER, Justice (on reassignment).

Francis Roden (Roden) appeals the denial of his application for habeas corpus relief grounded on a claimed ineffective assistance of counsel. We affirm.

## FACTS

In January of 1985, Roden was convicted by a jury of rape in the second degree. He appealed. This court affirmed that conviction in *State v. Roden*, 380 N.W.2d 669 (S.D.1986) (*Roden I*). Roden filed a petition for habeas corpus on March 16, 1987, claiming ineffective assistance of counsel at trial. After an evidentiary hearing, the circuit court denied the petition. Roden appeals.

In support of his ineffective assistance of counsel claim, Roden asserts that trial counsel deficiencies in four areas denied him a fair trial: (1) permitting testimony of the victim concerning other instances of sexual advances by Roden; (2) failure to object to hearsay testimony; (3) failure to object to prosecution statements during final argument; and (4) failure to adequately present an "impossibility" defense.

## DECISION

### Standard of Review

The test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), controls the review of ineffective assistance of counsel claims. *Luna v. Solem*, 411 N.W.2d 656 (S.D.1987). To succeed on this claim, Roden must show:

First, ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, ... that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

When reviewing trial counsel's performance, "it is not our function to second guess the decisions of experienced trial attorneys regarding matters of trial tactics." *State v. Walker*, 287 N.W.2d 705, 707 (S.D. 1980). However, the legal counsel guaranteed by the Sixth Amendment requires defense counsel to "investigate and consider possible defenses" and "other procedures" and to "exercise his good faith judgment thereon." *Crowe v. State*, 86 S.D. 264, 271, 194 N.W.2d 234, 238 (1972).

Generally, the making or failure to make motions and objections are trial decisions within the discretion of trial counsel. *State v. Anderson*, 387 N.W.2d 544 (S.D.1986); *State v. Tchida*, 347 N.W.2d 338 (S.D.1984). This general rule will not apply,[1] however, where trial counsel's actions cannot reasonably relate to any strategic decision and are clearly contrary to the actions of competent counsel in similar circumstances.

### 1. TESTIMONY OF VICTIM AS TO PRIOR BAD ACTS OF RODEN

Roden claims that trial counsel was deficient in his failure to object to testimony by the victim concerning prior acts of sexual misconduct by Roden.[2] State contends

1. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the claimed error. *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed. 2d 305 (1986). In other words, while this court will not compare counsel's performance to that of some idealized "super-lawyer" and will respect the integrity of counsel's decision in choosing a particular strategy, these considerations must be balanced with the need to insure that counsel's performance was within the

realm of competence required of members of the profession.

2. The victim testified without objection that on several earlier occasions (starting when she was in the fifth grade) Roden put his arm around her, kissed her on the lips and breasts, and had sex with her. On direct appeal, Roden asked this court to review the admissibility of this testimony. There we found the issue was not preserved for appellate review because of the

that error cannot be predicated on the failure to make an objection that could not have been sustained and that such failure to object related to trial counsel's strategy. State further argues that the "bad acts" testimony of the victim was clearly admissible under SDCL 19–12–5 and cases construing that rule. *See State v. Dokken*, 385 N.W.2d 493 (S.D.1986); *State v. Fender*, 358 N.W.2d 248 (S.D.1984).

SDCL 19–12–5 provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This prohibition against admission of prior bad acts to prove character is mandatory under the first sentence of the above statute. The permissive language of the second sentence creates an exception to the bar on admissibility of bad acts evidence. In other words, a prosecutor's insistence that the evidence is needed to prove intent, motive, etc., does not result in automatic admissibility. The trial court must find that the proposed evidence fits within one of the exceptions in SDCL 19–12–5, relates to a material issue, and "the probative value of the evidence substantially outweighs its prejudicial effect" upon the defendant. *State v. Sieler*, 397 N.W.2d 89, 93 (S.D. 1986).

Although we do not totally accept the arguments made by State, we must consider Roden's claims of ineffective assistance of counsel stemming from a failure to object to prior bad acts with the victim in the context of this trial record.[3] Prior to trial, State moved the court to admit testimony of prior bad acts by a third-party witness, LaVonne Wilburn (Wilburn). The trial court granted the motion and ruled that

Wilburn could testify in State's case-in-chief concerning prior bad acts with Roden under the common plan or scheme exception to SDCL 19–12–5. The testimony concerning prior bad acts by third-party witness Wilburn was challenged on direct appeal in *Roden I* and ruled admissible on the grounds that such testimony "indicated a common design or scheme." *Roden I*, 380 N.W.2d at 671. Obviously, having received the trial court's ruling as to Wilburn's prior bad acts testimony, counsel did not object to the far more relevant, probative testimony of the victim concerning matters leading up to the crime charged. This explains counsel's failure, without wholly excusing it.

■ Therefore, in the context of this trial record, including objections to Wilburn's testimony which were overruled, we cannot say that the failure of counsel to object to the victim's prior bad act testimony was, in and of itself, ineffective assistance of counsel under *Strickland, supra.*

## 2. HEARSAY TESTIMONY

Roden claims his counsel's performance was deficient because of trial counsel's failure to object to alleged hearsay testimony by Francis Wickstrom (victim's mother), Donna Natchke (family friend), and Dr. Michael Brown.

### 1. *Francis Wickstrom*

Roden contends that trial counsel should have objected to the prosecutor's question eliciting hearsay testimony from Francis Wickstrom (Wickstrom) about statements made to her by the victim. State argues that any objection made would have been overruled, citing *State v. Ogilvie*, 310 N.W.2d 192 (Iowa 1981), for the proposition that "[w]hen witnesses testify to the victim's complaint of the act, the testimony is not hearsay." *Id.* at 195.[4] The habeas

---

failure to object or move to strike at the trial. *Roden I*, 380 N.W.2d 669 (S.D.1986).

**3.** *See* footnote 1, *supra.*

**4.** However, *State v. Ogilvie*, 310 N.W.2d 192, 195 (Iowa 1981), goes on to state:

Statements which go beyond describing the nature of the act and the time and place of its occurrence may be hearsay. Specifically, statements which identify the accused are hearsay and inadmissible unless they come within an exception to the hearsay rule.

court found that the failure to object was a matter of trial tactics.

■ The testimony by Wickstrom was hearsay and counsel should have objected to it. However, counsel's failure to object here did not, alone, amount to prejudice to Roden which would have changed the result of the proceedings. Substantially the same testimony was properly received through the victim.

### 2. Donna Natchke

■ Donna Natchke testified about statements made to her by another witness, Chuck Wickstrom. Roden claims her testimony was hearsay and trial counsel should have objected to its admission.

State contends that the failure to object was a tactical decision by trial counsel; that if counsel had objected, State could have offered the testimony to impeach Chuck Wickstrom. We agree and further observe that the testimony was merely cumulative.

### 3. Dr. Michael Brown

■ Dr. Brown (Brown) testified about statements made to him by Wickstrom prior to the physical examination of the victim. The habeas court held that the testimony was admissible under the medical diagnosis exception to the hearsay rule. SDCL 19–16–8. Although *State v. Bawdon*, 386 N.W.2d 484 (S.D.1986), and the cases supporting it[5] make it clear that this exception applies to statements about "what happened," rather than "who did it," the habeas court determined that the witness' reference to the "sister's husband" was not equivalent to naming the assailant.[6] We believe the statement sufficiently referred to Roden, but we question Roden's claim of prejudice arising therefrom. Identity was not a material issue because the victim named Roden. Roden's defense was

not mistake as to identity, and Roden was not seriously prejudiced by a hearsay repetition of the victim's identification.

Additionally, trial counsel, in his cross-examination of Brown, used a letter from Brown to the Department of Social Services which was admitted into evidence. Trial counsel wanted this document admitted because Brown stated in the letter that he could not say with reasonable medical certainty that intercourse had occurred. However, the letter also contained a reference to "her brother-in-law" as the alleged perpetrator. This identification, therefore, would have come before the jury—although on redirect, rather than direct examination of the witness.

### 3. IMPOSSIBILITY DEFENSE

Roden claims his trial counsel was deficient in not adequately presenting a defense of "impossibility." Roden acknowledges that trial counsel elicited testimony from Roden's wife concerning difficulties having sexual intercourse around the time of the alleged incident, but he contends trial counsel should have (a) presented medical testimony about Roden's penile implant; (b) used that testimony to refute Brown's testimony; and (c) made the impossibility defense the "cornerstone" of defendant's closing argument.

■ It is impossible from this record to determine what the doctor who performed the implant would or could have said if he had been called to testify. Additionally, Brown testified that there is not always evidence of bleeding or tearing of the hymen in cases of forcible sexual penetration.

State points out that the complaint was amended to charge digital, as well as penile, penetration, so that the jury could have convicted Roden even if they accepted the impossibility of penile penetration. Roden claims that if the jury did not believe the

---

**5.** *State v. Garza,* 337 N.W.2d 823 (S.D.1983); *United States v. Iron Shell,* 633 F.2d 77 (8th Cir.1980); *United States v. Nick,* 604 F.2d 1199 (9th Cir.1979).

**6.** *See State v. Grady,* 183 N.W.2d 707 (Iowa 1971), wherein the examining doctor testified that the victim told him that "Clayton" had

raped her. The court held this testimony only corroborated the fact of the complaint and was admissible. The court found that although the "State's question asking for this identification was improper ... no one tells us who 'Clayton' might refer to or how he appears in the picture." *Id.* at 715.

victim's testimony about penile penetration, it would not have believed her as to digital penetration.

Although counsel probably could have improved on the evidence and the argument on this point, his actions were well within the area of acceptable trial strategy and performance. Ineffective assistance of counsel claims cannot be predicated on hindsight assertions that trial counsel did not choose the "best" strategy.

#### 4. FINAL ARGUMENT

Roden claims his trial counsel should have objected to certain statements made by the prosecutor in closing argument.

Specifically:

1) "Francis Wickstrom is not lying to you. Donna Natchke is not lying to you. The two victims were not lying to you." (T2—p. 166) and

2) "Now, this act, if you will, his technique, if you can call it that, ... the whole ball, right down the line, he's got a one track mind and that one track mind likes little girls, young girls, as young as five. As young as the first grade.... He likes young girls." (T2—p. 179)

■ In the first statement, the prosecutor did *not* comment upon defendant's guilt but on the veracity of State's witnesses. Such statements may be damaging, but do not necessarily constitute prejudicial error. *State v. Davis*, 401 N.W.2d 721 (S.D.1987). Further, Roden has not convinced us that omission of such statement would have created a different result, especially in view of the strength of the evidence adduced at trial. *See State v. Rosales*, 302 N.W.2d 804 (S.D.1981); *State v. Kidd*, 286 N.W.2d 120 (S.D.1979).

■ The second statement is more disturbing. Roden claims this second remark is a flagrant misuse of "bad acts" evidence. The prosecutor's statement equates evidence of Roden's alleged prior bad acts with a criminal propensity to sexually molest young girls. This statement by the prosecutor is exactly what SDCL 19–12–5 is designed to prevent! Trial counsel for Roden should have objected! No reason-

able strategy would support allowing the prosecutor to misuse evidence in this manner. Although the admission of the prior bad act testimony of the victim may be justified under an exception to SDCL 19–12–5, its misuse by the prosecutor completely undermines its accepted use. However, we do not believe that one improper comment significantly swayed the jury, especially when considering all of the damning evidence produced. We cannot perceive that a different result would have occurred had the statement not been made. *Kidd, supra; State v. Kindvall*, 86 S.D. 91, 191 N.W.2d 289 (1971).

AFFIRMED.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON, J., specially concurs.

SABERS, J., dissents.

HENDERSON, Justice (specially concurring).

Less than six months ago, I joined in affirming a conviction involving pedophilia. *See State v. Champagne*, 422 N.W.2d 840, 844 (S.D.1988) (Henderson, J., specially concurring). I wrote, *inter alia:*

> R.H., a sister of A.P. [victim], who lived in the same household (at one time) with appellant and her sister, testified that at a time not remote to A.P.'s molestation, she was sexually molested by appellant.

> This appellant committed acts which were similar—evincing a plan and a scheme—to sexually molest the little girls in this household....

> Though I believe this Court has been far too liberal in the past in affirming some convictions where certain "bad acts" were used, it is my opinion that the credibility of A.P. and appellant were greatly in dispute; R.H.'s testimony was sufficiently probative and relevant for admission under SDCL 19–12–5. Acts against R.H. were not remote-in-time,

nor were they extrinsic, for they were within the family circle.

*Champagne, id.* (footnote omitted).

Instantly, we have another pedophilia case. I quote from *State v. Roden (Roden I),* 380 N.W.2d 669, 670 (S.D.1986):

Investigation prior and subsequent to Roden's arrest led to the discovery that another minor, Roden's stepdaughter, had been sexually molested and raped by him repeatedly while she was in the third to eighth grades. Specific incidences of sexual contact related by the stepdaughter paralleled the complaint made by the present victim.... The trial court noted the special circumstances present in domestic child sexual abuse cases and found that a common scheme of circumstances appeared.

This Court affirmed the trial court's admission of the stepdaughter's "bad acts" testimony. *Id.* at 671. *See also State v. Willis,* 370 N.W.2d 193 (S.D.1985). The propriety of admission of the stepdaughter's testimony is res judicata. Roden cannot premise a claim of ineffective assistance of counsel on admission of that evidence. *See Lee v. Solem,* 405 N.W.2d 56 (S.D.1987).

Regarding the admission of testimony concerning Roden's prior bad acts involving victim, the same rationale applies: The evidence was admissible to show plan, scheme, or design. This plan was to physically overcome little girls, then sexually assault them at a time when they were unprotected by other adults in a household, over which Roden exercised authority. The effect of this evidence was not unfairly prejudicial because it resulted from the legitimate probative force of the evidence: It did not institute an unfair advantage resulting from persuasion by illegitimate means. *See State v. Kerkhove,* 423 N.W.2d 160, 163 (S.D.1988); *State v. Holland,* 346 N.W.2d 302, 309 (S.D.1984).

Given the weight of evidence against Roden, the prosecutor's improper remarks could not affect the outcome. Counsel's failure to object to the prosecutor's statements did not rise to the level of ineffective counsel because Roden did not pass the second step of the *Strickland* test: Counsel's deficient performance did not prejudice the defense. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). Roden did not show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland, id.* Roden was convicted in a jury trial, the result of which was reliable. In making this deduction, I consider past precedent in this Court, namely *Woods v. Solem,* 405 N.W.2d 59, 61 (S.D.1987). We held therein that prejudice exists only when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Another case announcing this principle is *Lee v. Solem,* 405 N.W.2d 56, 57 (S.D.1987). Here, evidence was overwhelming that Roden coerced the victim into having sexual intercourse. *Accord, State v. Bittner,* 359 N.W.2d 121, 125 (S.D. 1984), involving murder of police officer where evidence was overwhelming. She testified as to the particulars of this act which took place on the morning of June 11, 1984, and one Chuck Wickstrom testified that he saw the victim coming out of the bedroom, unclothed and alone.

SABERS, Justice (dissenting).

I dissent.

I would reverse the judgment of the habeas court, as Roden was denied his constitutional right to effective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The initial problem in this case was the State's use of bad acts evidence, which passed by Roden's trial counsel without objection. The minor victim was permitted to testify without objection about prior acts of sexual misconduct by Roden. Trial counsel's failure to object to this testimony was apparently due to the trial court's order granting the State's pretrial motion to admit testimony of third party Wilburn, concerning prior acts of sexual misconduct by Roden. The majority reasons that this explains counsel's failure to object to the

more relevant testimony of the victim concerning prior bad acts without excusing it.

The majority also asserts that this court's holding in *Roden I*, upholding the trial court's decision to admit the testimony of Wilburn under the common plan or scheme exception to SDCL 19–12–5, was correct. I disagree. Neither common plan nor modus operandi was a material issue in this case, and neither should be used as convenient catch-all exceptions to admit bad act evidence under SDCL 19–12–5. *See State v. Champagne*, 422 N.W.2d 840,-844 (S.D.1988) (Sabers, J., dissenting). It is further evident that none of the other exceptions to SDCL 19–12–5 are applicable to admit the testimony of Wilburn. The prior sexual contacts between Roden and the minor victim may be admissible under a limited exception to SDCL 19–12–5, recognized by several courts. *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965); *Boutwell v. State,* 719 S.W.2d 164 (Tex. Crim.App.1985); *State v. Haala,* 415 N.W. 2d 69 (Minn.App.1987). This exception is relevant to the specific charge, as it discloses the relationship of the parties, the opportunity to commit such acts, and corroborates the victim's claim. *Haala, supra.* However, this exception should not be extended to third party witnesses, as this would preclude a defendant from presenting any defense without the threat of automatic introduction of bad act evidence. *Boutwell, supra.* The exceptions to SDCL 19–12–5 cannot be used carte blanche for the automatic admission of prior bad acts. It should not be forgotten that the exceptions in the second sentence of SDCL 19–12–5 are exactly that—*exceptions* to the rule which prohibit prior bad acts.

Roden's trial counsel should have objected to the highly prejudicial prior bad acts testimony of the victim because the State's use of this evidence did not cease with its admission into evidence. In his closing argument, the prosecutor stated:

> Now, this act, if you will, his technique, if you can call it that, ... the whole ball, right down the line, he's got a one track mind and that one track mind likes little girls, young girls, as young as five. As young as the first grade.... He likes young girls.

Roden's trial counsel failed to object to this argument also.

Even the majority opinion points out the abusive and prejudicial effect of such argument:

> The prosecutor's statement equates evidence of Roden's alleged prior bad acts with a criminal propensity to sexually molest young girls. This statement by the prosecutor is exactly what SDCL 19–12–5 is designed to prevent! Trial counsel for Roden should have objected! No reasonable strategy would support allowing the prosecutor to misuse evidence in this manner. Although the admission of the prior bad act testimony of the victim may be justified under an exception to SDCL 19–12–5, its misuse by the prosecutor completely undermines its accepted use.

The failure of Roden's trial counsel to object to the admission of bad acts testimony, and then by silent acquiescence permit the State to completely misuse this evidence is inexcusable.

Even the majority concedes that Roden's trial counsel was clearly deficient in failing to object to certain hearsay testimony which implicated Roden. The cumulative effect of these errors establishes deficient performance by counsel and prejudice sufficient to require reversal for ineffective assistance of counsel under the two-prong test of *Strickland, supra.*