**Lewis E. ASHKER, Petitioner and Appellant,**

v.

**Herman SOLEM, Warden, South Dakota State Penitentiary, Respondent and Appellee.**

**No. 16675.**

Supreme Court of South Dakota.

Argued Nov. 29, 1989.

Decided June 13, 1990.

John E. Haak, Asst. Atty. Gen., Pierre, for respondent and appellee; Roger A. Tellinghuisen, Atty. Gen., on brief.

Michael J. Butler, Sioux Falls, for petitioner and appellant.

## PROCEDURAL HISTORY/ISSUES

HENDERSON, Justice

On June 13, 1985, Jerry Plihal (Plihal) was murdered. The Douglas County Grand Jury returned indictments against Lewis E. Ashker (Ashker) and Kurt Novaock (Novaock). They were both arrested in Nebraska. Novaock fought extradition, so the State severed the trials and proceeded first with the charges against Ashker. On June 10, 1986, the jury returned a verdict of guilty on Count I, Murder in the First Degree with Premeditated Design to Effect Death. Novaock was convicted in a separate trial of Murder in the First Degree While Engaged in the Felony of Robbery. Ashker appealed his conviction. This Court affirmed at *State v. Ashker*, 412 N.W.2d 97 (S.D.1987). Novaock's conviction was also affirmed on appeal. *State v. Novaock*, 414 N.W.2d 299 (S.D.1987).

Ashker filed a petition for a Writ of Habeas Corpus. An evidentiary hearing

was held. After the hearing, Ashker's request for relief was denied. Ashker appeals, alleging that:

(1) The representation afforded by trial counsel failed to meet the standards mandated by State and Federal Constitutions;

(2) The prosecution failed to deliver exculpatory evidence to the defense; and

(3) The trial court's requirement that the defense investigator's information be delivered to the prosecution violated Petitioner's rights to due process and effective counsel.

– Holding –

Rejecting the above contentions, we affirm the habeas court.

## FACTS PERTAINING TO THE HABEAS ACTION [1]

Attorney Tom Alberts (Alberts) was appointed by the trial court on January 10, 1986 to represent Ashker. Alberts was appointed expressly because of his expertise in criminal defense.

After Alberts was appointed to represent Ashker, he met with Ashker on a regular basis, kept Ashker informed of developments and conferred with him on all of the important decisions in the case.

For various reasons, Alberts does most of the investigation of the cases himself. His investigation of this case disclosed all of the exculpatory evidence available. It revealed the strengths and weaknesses of the State's case. Furthermore, Alberts was of the opinion that the trial court's Order to turn over investigative reports was overly broad. Since the Order was effective only if he hired an investigator at the State's expense, as a matter of trial strategy, he chose not to object to the Order until such time as an investigator's services would be helpful. Because of the success of his investigation, he did not need to use an investigator.

Alberts was able to focus his investigative skills where they would be most beneficial to Ashker's case, in part because the State had an "open file" policy. (Since this was a circumstantial evidence case, the

State turned over all of the pertinent evidence that normally might be held as rebuttal-type evidence). This disclosure included the rough sketch introduced at the habeas corpus trial labeled Petitioner's Exhibit 3 (measurement of tire tracks).

The record also discloses that, as part of its case-in-chief against Ashker, the State called former Douglas County Deputy Kelvin Solomen who testified regarding the measurement of the tire tracks.

In support of his contentions, Ashker called several witnesses to testify at the habeas corpus hearing. A major portion of Ashker's case centered on the collision of his pickup truck with a clothesline pole in the victim's backyard. On this issue, he called Dr. V.R. Nelson, a non-expert in paint analysis, who had not performed any analysis of the paint found at the collision. Dr. Nelson stated that Ashker's pickup truck could not have struck the clothesline pole or made tire tracks in Plihal's backyard. According to the habeas court, Dr. Nelson's opinion was based upon inaccurate assumptions, altered evidence, and was not supported by any tests or theories. Contrary to Dr. Nelson's testimony at the habeas corpus hearing, the habeas court found beyond a reasonable doubt that Ashker's pickup truck did collide with Plihal's clothesline pole.

Ashker never complained about the quality of his legal representation. As a matter of fact, Alberts handled the appeal, again without complaint from Ashker.

## DECISION

I. Ashker was not denied the effective assistance of counsel guaranteed by the State or Federal Constitutions.

■ South Dakota has adopted the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Luna v. Solem*, 411 N.W.2d 656 (S.D.1987). Under *Strickland*, to succeed in an ineffective assistance of counsel claim, the petitioner must show two requirements. First, that counsel's performance was deficient. This requires a show-

---

1. For the facts supporting Ashker's murder conviction, *see Ashker, supra.*

ing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, i.e., a trial which has a reliable result. *Luna, supra.* Prejudice exists when there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The burden of proving prejudice rests upon the defendant. *Strickland, supra; Luna, supra.* The defendant must overcome the strong presumption that counsel was competent. *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305, 323 (1986).

Applying the facts of the present case to the *Strickland* test, Ashker first claims that the performance of Alberts was deficient in that he should have interviewed Clara Metzger, Wally Peters and Eltor Semmler. Ashker contends that had Alberts interviewed these people, he would have discovered that the victim may not have been killed on Thursday night, as asserted by the State. One of the trial strategies of Alberts was to establish that Plihal was alive on Friday. Second, Ashker claims that the performance of Alberts was deficient because he did not call two other witnesses (Lonnie and Kathy Grasshorn) to testify for the purpose of impeaching a third witness (Lisa Jensen). Finally, he asserts that Alberts was ineffective because he did not present expert testimony on the damage to the victim's clothesline pole and Ashker's pickup truck.

▆ The habeas court entered extensive findings of fact and conclusions of law. In reviewing the habeas court decision, this Court will not upset factual findings unless they are clearly erroneous. SDCL 15–6–52(a). *Everitt v. Solem,* 412 N.W.2d 119 (S.D.1987).

▆ A. The habeas court determined that Clara Metzger's, Wally Peters' and Eltor Semmler's testimony is not helpful to Ashker. The habeas court also determined that Ashker failed to show that it was error for Alberts not to interview these three. Finally, the habeas court determined that Ashker failed to show that he was prejudiced because Alberts failed to interview these three people.

Alberts was asked at the habeas corpus hearing whether he interviewed any people who believed that they had seen Plihal on Friday. Alberts stated that he had interviewed Hans Beehler, Albert Ehreshmann and Eldy Peters. It seems that further interviews of Clara Metzger, Wally Peters and Eltor Semmler would only reveal information that Alberts had already been made aware of through his investigation. They had information pertaining to the possibility that Plihal was alive on Friday, June 14, 1985. Since Alberts had already interviewed three people with similar information, Alberts' failure to interview Metzger, Peters and Semmler was not prejudicial or deficient under the *Strickland* test to Ashker's case without the revelation of new evidence. We cannot say that these facts are clearly erroneous. *Everitt, supra.*

▆ B. The habeas court determined that Lisa Jensen was thoroughly cross-examined by Alberts at trial. It further determined that as a matter of trial strategy, after cross-examining Lisa Jensen and consulting with Ashker, Alberts decided not to call Lonnie or Kathy Grasshorn to testify for the purpose of impeaching Lisa Jensen. Ashker has failed to show error and prejudice to him by Alberts' failure to call Lonnie or Kathy Grasshorn to testify for the purpose of impeaching Lisa Jensen. Therefore, the determination that Lisa Jensen was thoroughly cross-examined was not clearly erroneous.

▆ C. The habeas court found that presenting expert testimony regarding damage to the pickup truck and clothesline pole would not have helped Ashker's defense.

Although Alberts did not hire an expert, he did consult with Mike Aldridge from Twin Cities Testing with regard to the paint chips. After having received the

State's reports and conclusions regarding its analysis of the paint, Alberts gave this information to Mr. Aldridge. He testified that Mr. Aldridge indicated the best position Ashker could be in would be that the paint "could have" come from the pickup. His final decision was to forego further testing, put the State to their burden of proof, and then attempt to discredit the testing procedures of the crime lab experts.

Ashker hired Dr. Ronald Nelson to give conclusions with respect to the pickup truck and the pole at the habeas proceedings. His conclusions were significantly different from those of the experts at the Division of Criminal Investigation crime lab. He stated on direct examination and admitted on cross-examination that debris left after the collision is a factor in determining what occurred at the scene. If the debris happens to be paint chips, as is the case here, it would tend to make an otherwise inconclusive case more conclusive, especially when the paint chips may be compared with a suspect vehicle. Further analysis may have concluded that the pickup truck was, in fact, the one which hit the pole. For obvious reasons, Alberts did not want such evidence to surface. Given the circumstances, we cannot say these facts are clearly erroneous. *Everitt, supra.*

We are of the opinion that Alberts' decisions were sound and in the best interest of his client. Ashker has not shown where Alberts' decisions were deficient or prejudicial under the *Strickland* test.

II. The State did not fail to turn over exculpatory evidence in violation of Ashker's due process rights.

Ashker advocates the State suppressed evidence of a witness, Gerry Semmler (Semmler), and evidence of measurements of tire tracks from the scene of the murder, which were both supposedly exculpatory in nature.

■ A line of cases stemming from *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), hold that suppres-sion of evidence favorable to the accused, requested by the defendant, violates due process where the evidence is material to guilt or innocence. *United States v. Peltier,* 800 F.2d 772 (8th Cir.1986); *State v. Wilde,* 306 N.W.2d 645 (S.D.1981). In reviewing a similar issue, the Supreme Court in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) stated that to answer such an issue depends on 1) a review of the facts, 2) the significance of the failure of defense counsel to request the material, and 3) the standard by which the prosecution's failure to volunteer exculpatory material should be judged. Thus, if Ashker was not aware of the evidence, if the evidence is both favorable and material, and he has made a request for the evidence, there has been a due process violation. *Brady, supra; Agurs, supra.*

For the purpose of due process analysis, evidence is *favorable* only "if the omitted evidence creates a reasonable doubt that did not otherwise exist ..." *Agurs,* 427 U.S. at 112, 96 S.Ct. at 2402. "Evidence is *material* only if there is a reasonable probability that, had the evidence been disclosed, to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

■ The information that the State had in its possession from Semmler was neither favorable nor material as those terms are defined in the due process analysis.[2] The testimony of Semmler would only have been cumulative and would not have revealed anything new or shed any more light on Ashker's innocence or lack thereof. It cannot be said that Semmler's testimony at trial would have altered the outcome of the trial.

■ Regarding the track measurements, the *Brady* analysis need not be applied. As the court noted in *Agurs:*

> The rule of *Brady* arguably applies in three quite different situations. Each involves the discovery, *after trial, of information which had been known to the*

---

2. He told the State investigators that he did not know when it was that he last saw Jerry Plihal alive. The trial court found that when he was interviewed he told the police that he was not sure when it was that he last saw Plihal. When he was asked the same question at the habeas corpus hearing, he was still uncertain when it was that he last saw Plihal.

*prosecution but unknown to the de-
fense.* (Emphasis added).

Thus, before beginning a *Brady* analysis to determine whether or not specific evidence must be disclosed to Ashker by the prosecution, we must determine that the evidence was not disclosed. We are unable to reach that conclusion.

Judge Jon Erickson, then the prosecuting Assistant Attorney General, testified at the habeas hearing that he received a rough drawing of the tracks late in the entire process and that a copy was furnished to Mr. Alberts in the courtroom during the trial. The habeas court found that the prosecutor discovered the rough sketch containing the track measurement during Ashker's trial and disclosed it to Ashker's counsel as soon as he was made aware of its existence. The habeas court further found that the prosecutor introduced the track measurement as evidence at Ashker's trial. We cannot say these facts are clearly erroneous. *Everitt, supra.*

In conclusion, the Eighth Circuit Court of Appeals has stated in *Peltier, supra,* that we are bound by the *Bagley* test (*citing Brady, supra*) which requires the court to be convinced, from a review of the entire record that had the evidence withheld been made available, the jury probably would have reached a different result. This Court has not been so convinced.

III. The trial court did not deny Ashker effective assistance of counsel and did not violate his due process rights by ordering counsel to deliver to the State information unearthed by his private investigator.

■■■ Ashker argues that the court order allowing the defense to hire an investigator and also requiring a written report be sent to the prosecution denied Ashker effective assistance of counsel because no attorney would hire an investigator under those circumstances. We find this argument totally lacking in merit.

A review of Alberts' testimony at the habeas corpus hearing reveals that no objection was made to the condition imposed by the court because, at that point, he had not decided to hire an investigator. Alberts indicated that if he had decided to employ an investigator, an objection could have been made at any time before trial.

The habeas court found and the record substantiates that Alberts did not need an investigator. It is not the function of this Court to second-guess the tactical decisions of the trial attorney. *State v. Tchida,* 347 N.W.2d 338 (S.D.1984).

■■■ Finally, Ashker fails to cite any authority for his proposition that the trial court deprived him of due process. We deem that issue waived. SDCL 15–26A–60; *State v. Dixon,* 419 N.W.2d 699 (1988).

Affirmed.

All the Justices concur.