**Tyrane PHYLE, Petitioner and Appellant,**

v.

**Walter LEAPLEY, Warden of the South Dakota State Penitentiary, Appellee.**

**No. 17662.**

Supreme Court of South Dakota.

Considered on Briefs May 28, 1992.

Decided Sept. 9, 1992.

James A. Eirinberg, Sioux Falls, for petitioner and appellant.

Mark Barnett, Atty. Gen., Charles D. McGuigan, Asst. Atty. Gen., Pierre, for appellee.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Tyrane E. Phyle (Phyle) was convicted of first degree robbery, as defined by SDCL 22–30–6. He later pleaded guilty to being a habitual offender, in violation of SDCL 22–7–8. Phyle appealed his conviction on the charge of first degree robbery. This Court in *State v. Phyle*, 444 N.W.2d 380 (S.D.1989) affirmed Phyle's conviction.

On December 27, 1989, Phyle submitted an application for writ of habeas corpus to the Fifth Judicial Circuit Court. An amended petition was subsequently submitted. On March 8, 1991, the Honorable Eugene Dobberpuhl issued an initial writ of habeas corpus. An evidentiary hearing was held on May 31, 1991. On June 6, 1991, the court issued its memorandum decision concluding Phyle was not entitled to habeas corpus relief. On August 2, 1991, the circuit court entered findings of fact

and conclusions of law, holding that Phyle's petition for habeas corpus relief was denied and the writ of habeas corpus quashed. Thereafter, Phyle filed his notice of appeal from said decision.

On appeal, Phyle raises the following issues:

I. *Was Phyle denied effective assistance of counsel in the underlying first degree robbery trial, in violation of his constitutional rights?*

II. *Did the trial court properly accept Phyle's guilty plea to the habitual offender charge?*

### FACTS PERTAINING TO THE HABEAS ACTION *

Phyle asserts he was denied his constitutional right to effective assistance of counsel at trial on the first degree robbery charge.

Trial judge appointed two attorneys to represent Phyle. Trial judge considered one of these attorneys to be one of the best defense attorneys in that part of the state.

Phyle asserts errors by his counsel, during the course of the trial, rose to the level of ineffective assistance of counsel. Phyle argues that his counsel failed to object to various bad acts evidence and failed to request limiting instructions, which would have presumably shielded the jury from hearing or considering testimony regarding his other crimes or bad acts. Specifically, Phyle contends counsel erred in failing to file a motion in limine regarding the admissibility of prior crimes or bad acts. Second, he claims counsel erred in failing to file a pretrial motion requesting State to disclose and describe the prior crimes and bad acts. Third, he asserts counsel erred in failing to object to supposed prejudicial testimony regarding these prior crimes and bad acts.

Further, Phyle asserts counsel elicited, then failed to object to, a State witness' testimony that Phyle invoked his constitutional right to remain silent following arrest. He also claims that counsel erred in

* For the facts supporting Phyle's first degree robbery conviction, *see State v. Phyle,* 444 N.W.2d

failing to object to State witness testimony regarding Larry Phyle's testimony. Lastly, Phyle argues counsel erred in failing to request a jury instruction on prior inconsistent statements.

Additional facts will be set out where pertinent.

### DECISION

I. *Phyle was not denied effective assistance of counsel in the underlying first degree robbery trial, in violation of his constitutional rights.*

This Court applies the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in evaluating ineffective assistance of counsel claims. *Luna v. Solem,* 411 N.W.2d 656 (S.D.1987). The burden rests with the petitioner to show two requirements to prevail on this claim. First, the petitioner must show that his counsel's performance was deficient. To establish this, petitioner must show that his counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the defendant by the Sixth Amendment. Second, petitioner must show that the deficient performance by counsel prejudiced the defense. This is established by a showing that counsel's errors were so serious as to deprive the defendant of a fair trial—a trial which has a reliable result. *Ashker v. Solem,* 457 N.W.2d 473, 475–76 (S.D.1990) (citing *Luna v. Solem,* 411 N.W.2d 656 (S.D.1987)). The burden is on the petitioner to prove prejudice. *Strickland, supra; Ashker,* 457 N.W.2d at 476. Prejudice may be found when there exists a reasonable probability that, but for the unprofessional errors of counsel, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Ashker,* 457 N.W.2d at 476. However, petitioner must overcome the strong presumption that his counsel was competent. *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305, 380 (S.D.1989).

323 (1986). Further, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance'" and "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential.'" *Kimmelman,* 477 U.S. at 381, 106 S.Ct. at 2586 (quoting *Strickland*). The petitioner must overcome the presumption that, under the circumstances, the challenged action "'might be considered sound trial strategy.'" *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 100, 101, 76 S.Ct. 158, 164, 164, 100 L.Ed. 83 (1955)). Upon review of a habeas court decision, this Court will not upset factual findings unless they are clearly erroneous. *Ashker,* 457 N.W.2d at 476. Historically, this Court limits, in habeas corpus proceedings, the scope of review because habeas corpus is in the nature of a collateral attack upon the final judgment. We do not consider this writ as a remedy to correct irregular procedures; "rather, in the context of post conviction attacks on the conviction itself, habeas corpus reaches only jurisdictional error." *Goodroad v. Solem,* 406 N.W.2d 141, 142, 143 (S.D.1987).

With our guidelines in place, we now turn to Phyle's allegations of ineffective assistance of counsel. Phyle asserts that a prime example of this ineffective assistance was counsel's failure to object to the solicitation and admission of various bad acts evidence, including prior crimes, wrongs, etc., which Phyle allegedly committed. Specifically, examples of this testimony included a statement by Sheriff Long, a state witness, that Phyle was a suspect in "some other activity." Also, testimony was elicited from Phyle's brother Larry, (his accomplice in underlying action) of a prior crime which both were involved in and prosecuted. Another statement by Larry pertained to Phyle's reputation and alleged criminal activity in the state penitentiary. Larry further testified that Phyle talked to him about Phyle's having "criminal activity in his blood" and immediate desire to smoke marijuana. Larry further testified to his eyewitness account of Phyle's beating his girlfriend. Phyle asserts that counsel's failure to object to the testimony or failure to "vigorously object" was highly prejudicial to Phyle's defense and were prime examples of counsel's deficient performance. Phyle believes that this testimony allowed the State to portray Phyle as extremely dangerous, a repeat offender, and whose act of robbery was in conformity with his character, in violation of SDCL 19–12–3 and 19–12–5.

■ Generally, the making or failure to make motions and objections are trial decisions within the discretion of trial counsel. *Roden v. Solem,* 431 N.W.2d 665 (S.D. 1988). However, this general principle will not apply where trial counsel's actions cannot reasonably relate to any strategic decision and are clearly contrary to the actions of competent counsel in similar circumstances. *Roden,* 431 N.W.2d at 667.

■ We now address these points. In regard to Larry Phyle's testimony, Phyle's counsel attempted to discredit Larry's testimony in a number of ways relevant to the disputed testimony. This, of course, is a legitimate and permissive trial tactic for defense attorney to utilize. In fact, one would question a criminal defense attorney who did not utilize this tactic against an adverse witness. However, utilization of this tactic allows the prosecution to elicit testimony, regarding the issue, by prior bad acts evidence. *See, State v. Klein,* 444 N.W.2d 16, 19 (S.D.1989). Counsel's cross-examination of Larry, a state witness regarding alleged favorable treatment, residence with Phyle, and participation in a previous robbery was for impeachment purposes. In regard to lack of objection to this testimony, we must assume that counsel, having invited this testimony by questioning Larry's credibility on these points, (a legitimate trial tactic) made a trial lawyer's decision. We cannot say that failure to object to this prior bad acts testimony of Larry was ineffective assistance of counsel. This Court will not "second guess the decisions of experienced trial attorneys regarding matters of trial tac-

tics." *State v. Walker*, 287 N.W.2d 705, 707 (S.D.1980).

■ Testimony was elicited from a state witness, Sheriff Long that Phyle "was a suspect in some activity up in Wahpeton." The introduction of this testimony was improper under SDCL 19–12–5, and we believe there should have been an objection. Having said that, nevertheless, we cannot say that counsel's failure to object was sufficiently prejudicial or deficient under the *Strickland* test. A different outcome would not have occurred if the statement had not been made. *Roden*, 431 N.W.2d at 670. We make the same assessment regarding Larry's testimony of Phyle desiring a marijuana cigarette.

■ Phyle argues that counsel should have blocked introduction of prior bad acts evidence by certain limiting instructions. Again, the making or failure to make motions are trial decisions within counsel's discretion. *Roden*, 431 N.W.2d at 667. Counsel's failure to file a motion in limine to prevent prior bad acts is allegedly an example of counsel's deficient performance. However, we rule that no such motion was necessary because trial court previously ruled on the admissibility of prior bad acts evidence. Additionally, Phyle asserts counsel should have filed a motion requesting State to disclose and describe prior crimes and bad acts, allegedly committed by Phyle. Essentially, this would have been an idle act because State already listed these alleged crimes and bad acts in a Motion for Permission to Use Prior Conviction for impeachment purposes. Defense counsel was fully aware of this. Since there was no need for these motions and Phyle was not subsequently prejudiced by surprise introduction of such evidence, we conclude counsel's failure to make the relevant motions was not deficient.

Phyle next argues that his counsel was ineffective in failing to object to testimony that Phyle invoked his constitutional right to remain silent following his arrest. The circuit court found in its Findings of Fact and Conclusions of Law that the sheriff's testimony did not touch on the fact that Phyle invoked his right or refused to make a statement, but rather explained what happened when he arrested Phyle. No constitutional procedural irregularities attended thereto. *Anderson v. Charles*, 447 U.S. 404, 409, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222, 227 (1980); *Watt v. Solem*, 427 N.W.2d 118, 121 (S.D.1988).

■ Phyle asserts that counsel should have objected to state witness testimony which allegedly gave opinions concerning Larry Phyle's confession and bolstering his testimony. These were statements by two police officers, testifying that it was their experience that a suspect in a criminal investigation issues a denial or makes false statements, later realizing that their stories were not convincing. The habeas court determined that these statements were not opinion testimony going to Larry Phyle's credibility. We agree. Such testimony was not elicited to bolster Larry Phyle's credibility. We must note that similar testimony has been allowed in rape trauma syndrome cases. *See,* majority opinion in *State v. Bachman*, 446 N.W.2d 271, 275 (S.D.1989) (Henderson, J., and Sabers, J., dissenting). This testimony did not go to the truth of Larry Pyle's testimony. Objection to solicitation of this testimony is not prejudicial since it would not have been sustained and affected the ultimate result of the proceedings.

■ Lastly, Phyle complains of his counsel's failure to request a jury instruction on prior inconsistent statements. He bases this on an asserted inconsistency in witness Larry Phyle's and witness Gertrude Wolfe's testimony. In regard to objections regarding jury instructions:

> [i]n a habeas corpus appeal, under our scope of review we will not ordinarily review jury instructions, we may review whether, under similar circumstances, a reasonably competent attorney exercising customary skills and diligence, would have objected so as to determine whether counsel's performance falls within the wide range of professional assistance required by the Sixth Amendment.

*Satter v. Solem*, 422 N.W.2d 425, 428 (S.D. 1988).

On review, jury instructions are to be considered as a whole and are sufficient if, when so read, they correctly state the law and inform the jury. *State v. Martin*, 449 N.W.2d 29, 33 (S.D.1989). We believe that the instructions, when read as a whole, properly and sufficiently instructed the jury fully and correctly on the law. Counsel may have had a legitimate basis for requesting the inclusion of the instruction. However, instructions relating that testimony of an accomplice should be viewed with caution; that prior conviction can affect a witness' credibility; and rejection of any witness' testimony whom jury believes swore falsely, were all instructions given to the jury. These instructions were sufficient for the jury. *See, State v. Phyle*, 444 N.W.2d 380, 382 (S.D.1989). We do not believe prejudice attended hereto by counsel's failure to request the instruction nor do we find counsel's assistance deficient in failing to so request. Again, we do not perceive that a different result would have occurred had the instruction been requested.

Therefore, we affirm the habeas court's determination that Phyle enjoyed competent effective assistance of counsel.

II. *The trial court properly accepted Phyle's "guilty plea" to the habitual offender charge.*

State filed an Information charging Phyle as an habitual offender, in violation of SDCL 22-7-8. State subsequently re-filed the Information with an amended witness list charging Phyle with having been convicted of six previous felonies. Phyle initially pleaded not guilty to the habitual offender charge but withdrew this plea at the October 3, 1988, hearing. Trial judge then readvised Phyle of his rights and ascertained that the withdrawal of his previous "not guilty" plea to have been voluntarily made. Phyle then entered a guilty plea to the habitual offender charge.

Trial judge then questioned Phyle if he was the person actually convicted of the prior offenses listed in the habitual offender information. Phyle admitted that he pleaded guilty to all of the six prior offenses listed in the information and was sentenced thereon. Phyle then followed with an eight page recitation detailing the facts and circumstances surrounding each of the felonies listed in the Information. He admitted his identity with the six prior felony convictions, fully reflecting his participation therein.

Phyle argues that trial court, prior to determination of habitual offender status, had to independently determine if each of the six prior felony convictions were constitutionally valid. Additionally, Phyle asserts that trial court had an insufficient record on which it could find that Phyle was an habitual offender, because the State failed to introduce any evidence and the trial court failed to take judicial notice of court files concerning the prior felonies. Phyle asserts that these were errors of a constitutional magnitude requiring vacation of his habitual offender conviction.

In *State v. Aspen*, 412 N.W.2d 881 (S.D.1987), we held that the habeas court may, and should, take evidence by way of taking judicial notice of prior criminal files. Evidence must be presented to satisfy the trier of fact *beyond a reasonable* doubt that the defendant was the individual convicted. *Alexander v. Solem*, 383 N.W.2d 486 (S.D.1986). A guilty plea is not valid unless the record "in some manner" indicates that defendant freely and intelligently waived certain constitutional rights. *Application of Garritsen*, 376 N.W.2d 575, 577 (S.D.1985).

In this case, trial judge readvised Phyle of his rights after his withdrawal of his plea of not guilty, and determined this withdrawal to have been voluntarily and knowingly made. Trial judge also questioned Phyle if he was the person actually convicted of the prior offenses listed in the Information. Phyle affirmatively responded and proceeded to detail, at length, the events and circumstances of each felony. We believe that this self-offered evidence was sufficient evidence to meet State's burden to prove Phyle is an habitual offender. The procedure, employed by the trial court, was not perfect but it was sufficient. We have held that "error even of constitutional

dimension may be deemed harmless where the reviewing court finds that absent the error, it is clear beyond a reasonable doubt that the jury [or trial court] would have returned a conviction." *State v. Garritsen*, 421 N.W.2d 499, 501 (S.D.1988). Under the circumstances of this case, it is clear beyond a reasonable doubt that trial court would have returned a conviction on the habitual offender information.

Lastly, we note that Phyle did not put the validity of his prior convictions into issue at trial court level.

> The defendant has the initial burden of placing the validity of the prior convictions in issue. Where the defendant merely admits the prior convictions, the admission is functionally equivalent to a guilty plea relieving State of its burden of proving the prior offense.

*Stuck v. Leapley*, 473 N.W.2d 476, 478 (S.D.1991) (citing *Cox v. Hutto*, 589 F.2d 394 (8th Cir.1979)). In this case, Phyle did not place the validity of the prior convictions in issue, thereby failing to meet his initial burden. Nor did Phyle advance a motion to strike or other appropriate means to put the contention in issue.

We affirm trial court's conviction of Phyle under the habitual offender statute.

We are not unmindful that many allegations against defense counsel are brought before this Court—not only in this case—but a host of others. Employing 20/20 hindsight, it is far easier for new counsel to point out that trial counsel failed to do this and should have done that. We must not be overcome by new counsel who scours the record seeking imperfection. *See, State v. Pieschke*, 262 N.W.2d 40, 46 (S.D.1978). Trials are not always perfect. Criminal defendants are not entitled to trial perfection; they are entitled to a fair trial. Here, an armed robber of a liquor store was found guilty by overwhelming evidence. We are convinced there was a "reliable result."

The habeas court is affirmed in all respects.

MILLER, C.J., and WUEST, J., concur.

SABERS and AMUNDSON, JJ., dissent.

SABERS, Justice (dissenting).

Phyle readily established numerous deficiencies in his counsel's performance, thereby satisfying the first prong of *Strickland*. In fact, the majority opinion says it best:

> Phyle asserts that a prime example of this ineffective assistance was counsel's failure to object to the solicitation and admission of various bad acts evidence, including prior crimes, wrongs, etc., which Phyle allegedly committed. Specifically, examples of this testimony included a statement by Sheriff Long, a state witness, that Phyle was a suspect in "some other activity." Also, testimony was elicited from Phyle's brother Larry, (his accomplice in underlying action) of a prior crime which both were involved in and prosecuted. Another statement by Larry pertained to Phyle's reputation and alleged criminal activity in the state penitentiary. Larry further testified that Phyle talked to him about Phyle's having "criminal activity in his blood" and immediate desire to smoke marijuana. Larry further testified to his eyewitness account of Phyle's beating his girlfriend. Phyle asserts that counsel's failure to object to the testimony or failure to "vigorously object" was highly prejudicial to Phyle's defense and were prime examples of counsel's deficient performance. Phyle believes that this testimony allowed the State to portray Phyle as extremely dangerous, a repeat offender, and whose act of robbery was in conformity with his character, in violation of SDCL 19–12–3 and 19–12–5.

The majority opinion then proceeds to "assume that counsel['s] lack of objection" thereby openly inviting this offensive testimony was "a legitimate trial tactic." I disagree on both points. In my view, it is wrong for this court to assume or to conclude the deficiencies were trial tactics or legitimate. The state failed to call the defense lawyer to the stand so there is not any proof that these deficiencies were even "trial tactics." Even if we assume "impeachment" was the trial tactic, it is obvi-

ous that a reasonably prudent defense counsel need not let in otherwise inadmissable offensive material so that he can attempt impeachment. It is generally impossible to win the war on the wrong battlefield.

As to the second prong of *Strickland*, it is evident that this offensive, otherwise inadmissable testimony from the Sheriff and Phyle's own brother was so damaging and prejudicial that Phyle could not have received a fair trial.

AMUNDSON, Justice (dissenting).

The majority opinion recognizes that the failure to object to the testimony regarding Phyle being a suspect in criminal activity in North Dakota was inadequate legal assistance. This compounded with the failure to object to the testimony elicited from the same state witness, Sheriff Long, regarding Phyle's refusal to be interviewed by the sheriff when arrested in Oklahoma leads to only one conclusion; namely, Phyle was denied his right to effective assistance of counsel. The sheriff's testimony was as follows:

Q: Now, Sheriff Long, did you interview Ty Phyle when you picked him up down in Bartlesville, Oklahoma?

A: No I didn't.

Q: And why didn't you interview him?

A: We served the Brown County warrant on him when we picked him up. *And a short time later we advised him of his rights.* And he basically told us that he was gonna get ahold of an attorney and he was gonna get off this bum rap up here in Sisseton.

Q: And so did you interview him at that time?

A: No, I can't interview somebody after they indicated they want an attorney. At least I don't consider it proper.

It is inconceivable that this testimony has any relevance to proving that Phyle was guilty of armed robbery. If he says it was a bum rap, that is certainly consistent with the entry of a "not guilty" plea. This court held in *State v. McBride,* 296 N.W.2d 551 (S.D.1980), that a defendant was denied effective assistance of counsel where counsel failed to object to testimony of a deputy sheriff regarding defendant's refusal to give a statement on the charged offense. We specifically stated:

The testimonial evidence was the result of questions by the prosecutor directed to the deputy sheriff who investigated the burglary. The refusal of a suspect to make a statement is not admissible evidence. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). By his inaction, appellant's counsel allowed evidence to reach the jury which would tend to equate appellant's silence with guilt. Again, we cannot perceive any basis for appellant's counsel's refusal to act in accordance with this inadmissible testimony.

*Id.* at 555.

If a law enforcement officer interviews a suspect or a person charged with a crime, does not that colloquy amount to a statement being given by the individual interrogated which, if after proper advisement of rights, can be used by the prosecution in its case-in-chief or for impeachment purposes. Further, what relevance does what happened when Phyle was arrested have to do with the charged crime. The only logical purpose of this testimony was to show that Phyle, when caught, exercised his right to remain silent and to have an attorney. This is part of our criminal procedure and has never been deemed to be an unreasonable request. This testimony obviously allowed the jury to equate silence (not consenting to be interviewed) with guilt.

When looking at the totality of the claims of inadequate assistance in this case, it is mystifying that this record does not contain the testimony of trial defense counsel describing his rationale for the trial tactics employed in the defense of the case. I cannot assume what they were unless I can review them from the "horse's mouth." Based on this record, I would adhere to the precedent established in *McBride,* where we concluded as follows:

All men charged with crimes are entitled to complete equality at law and appellant

was not afforded that equality. Counsel's inaction regarding potential objections, jury instructions, and motions support this conclusion. Although each separate inaction in and of itself may not constitute inadequate representation, *taken together*, they created adversarial mediocrity which infested appellant's entire defense. Such legal quality cannot be said to be more than a superficial effort on the part of appellant's counsel. By being provided with no more than perfunctory and causal representation, appellant's right to adequate legal counsel and a fair trial has been violated.

*Id.* at 555–56 (emphasis added).

In this case, each claimed error might not have equated to ineffective assistance of counsel. The totality of the claimed errors can lead to only one conclusion: this was a mediocre defense which was not adequate and effective as required by our constitution and prior decisions.

I would reverse the habeas court.