1996 SD 78

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Randy Alan FOWLER, Defendant and Appellant.**

No. 19144.

Supreme Court of South Dakota.

Considered on Briefs May 22, 1996.

Decided June 26, 1996.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, for plaintiff and appellee.

Phillip O. Peterson of Frieberg, Rudolph & Peterson, Beresford, for defendant and appellant.

GILBERTSON, Justice.

[¶ 1] Randy Fowler appeals from a judgment of conviction of rape in the second degree. We affirm.

## FACTS AND PROCEDURE

[¶ 2] On June 8, 1991, Randy Fowler, a twenty-three-year old, uniformed police officer for North Sioux City, South Dakota, responded to a complaint of a loud party and disturbance at the Joan Doe [1] residence. Mrs. Doe was hosting a going-away party for her daughter Jane, aged seventeen and a recent high school graduate, before Jane left for Air Force basic training. Jane had pre-enlisted the previous year. Three other North Sioux City police officers were also called to the scene where they discovered approximately 60 persons present. A large number of these persons, including Jane, were drinking alcohol, despite apparently being underage. Several arguments and fights had started between some persons at the party. Fowler directed his attention toward Jane and her friend, talking to the two girls while Scott Price, the chief of police, visited with Mrs. Doe. The officers dispersed the party-goers, advising them against drinking and driving, and no arrests were made.

[¶ 3] Following this call to the Does', Chief Price directed the officers to return to the station where he warned them against any type of fraternization while on duty. At the conclusion of his warning, Price looked at Fowler and pointed his finger at him.

[¶ 4] Later that same evening, in response to a second complaint, Fowler returned to the Doe residence. Jane was emotionally distraught when he arrived. Fowler and Jane entered his patrol car to talk, ostensibly for the purpose of Fowler calming Jane down. When Fowler returned to his patrol, Jane accompanied him in the patrol car. Fowler parked near a water utility building and the two continued to talk for approximately two hours about Jane's entering the military and her future plans. Fowler had been in the military and advised Jane as to what she could expect in basic training. When Fowler's shift ended at 2 a.m., he dropped Jane off at an elementary school parking lot while he returned to the station to exchange the patrol car for his personal vehicle and end his shift. Fowler had told Jane he would take her home. When Fowler returned, instead of driving Jane home, he drove to a gravel road near the edge of town and parked his vehicle. At this point, the facts are in dispute.

[¶ 5] Fowler claimed the two enjoyed consensual sexual intercourse and Jane offered a very different version of the facts. Jane maintained Fowler told her he could keep her from entering the military by informing about her drinking that evening. Jane further maintained Fowler told her he would not do so if she submitted to sexual intercourse with him. When Jane refused, Fowler began rubbing her leg and pulled his

---

1. The victim's name and the names of her family members have been changed for protection of their privacy.

pants down. He then grabbed her head and pushed it between his legs, forcing her to perform oral sex on him. Jane stated this lasted "a couple seconds." Fowler then removed his pants and moved to the passenger side of the car where Jane was sitting and raped her vaginally. Jane reported he held her arms down while she cried. Fowler then drove Jane home.

[¶ 6] Jane did not tell anyone about the rape at that time. Two days later, Mrs. Doe took Jane to the Sioux City, Iowa bus station where Jane boarded a bus to Sioux Falls to leave for basic training. Fowler arrived at the bus station with his ex-girlfriend in his car. As he approached the station, Jane told her mother to keep him away from her. Within ten or fifteen minutes, Jane left on the bus. During that time Jane kept her distance from Fowler. Fowler claimed Jane's mother stayed in her car at this time while he and Jane said their good-byes and kissed.

[¶ 7] At the Sioux Falls airport on June 11, a group of Jane's friends arrived to say good-bye. Fowler procured a ride to Sioux Falls with two of Jane's friends and Mrs. Doe, stating Jane wanted him to be at the airport. Fowler presented Jane with a rose at the airport, which she accepted without speaking, and then turned and walked away. Fowler claimed the two kissed and cried while the others walked on ahead. On the way home from Sioux Falls, Jane's friends, Mrs. Doe, and Fowler stopped at a fast-food restaurant. While in the restaurant, with the others in the restroom, Fowler told Jane's friend that he and Jane had been intimate. Fowler had also told other police officers that the two would be dating, boasting that "she was really good" and "had no tan lines."

[¶ 8] After Jane left for basic training, Fowler frequently arrived at Mrs. Doe's doorstep, in uniform and with his patrol car, or would call on the telephone, asking for Jane's address. Within a few days, Mrs. Doe, annoyed at the unwelcome attention and suspicious that something had occurred between Jane and Fowler, contacted Chief Price who agreed to speak with Fowler. Within two weeks, Jane was permitted to call home from basic training. By this time, Mrs. Doe had spoken with Jane's friend and Mrs. Doe told her daughter that Fowler had claimed he had engaged in sexual relations with Jane. At that point, Jane told her mother to press charges and she would give her the details later. Mrs. Doe went to the station to press charges, but testified the matter progressed no further. Shortly thereafter, Mrs. Doe learned that Fowler was no longer with the North Sioux City police force.

[¶ 9] In June 1994, Fowler was charged with second-degree rape of Jane Doe. He was brought to trial on a charge of violating SDCL 22-22-1(2). The trial was moved to Mitchell on a change of venue motion by Fowler. Following a two-day jury trial in January 1995, Fowler was found guilty as charged by unanimous verdict. On March 13, 1995, Fowler was sentenced to twenty years in the state penitentiary. *See State v. Fowler*, 1996 SD 79, 552 N.W.2d 391.

[¶ 10] Fowler appeals his conviction raising the following two issues:

1. Whether the trial court improperly admitted Fowler's employment and educational history for purposes of impeachment?

2. Whether Fowler's due process rights were violated by the State's suppression of evidence and the trial court's permitting testimony from evidence not properly disclosed to Fowler?

## ANALYSIS AND DECISION

[¶ 11] **1. Whether the trial court improperly admitted Fowler's employment and educational history for purposes of impeachment?**

[¶ 12] Fowler claims the trial court improperly admitted evidence of his educational and employment history in that such evidence was irrelevant to the rape trial. Fowler further claims such evidence was improperly admitted as character evidence. The decision to admit evidence into trial is within the discretion of the trial court. We review such decisions under an abuse of discretion standard of review. *State v. White*, 538 N.W.2d 237, 242 (S.D.1995). " 'An abuse of discretion refers to a discretion exercised

to an end or purpose not justified by, and clearly against reason and evidence.' In applying the abuse of discretion standard, 'we do not determine whether we would have made a like decision, only whether a judicial mind, considering the law and the facts, could have reached a similar decision.'" *State v. Wilkins*, 536 N.W.2d 97, 99 (S.D. 1995) (citations omitted).

[¶ 13] Fowler took the witness stand in his own defense at trial. On direct examination, Fowler briefly stated his educational and employment history. Fowler stated he had received an associate degree in police science technology from Western Iowa Tech and had attended three years of undergraduate college. Fowler also stated he worked while attending college and had held positions as a North Sioux City police officer and an East Central Drug Task Force undercover agent. Fowler was questioned as to when he held both of these positions. On cross-examination, the prosecution went through Fowler's educational and employment history with him, from a resume prepared by Fowler for employment purposes and from Fowler's employment application to the North Sioux City police force. This questioning produced inconsistencies between Fowler's direct testimony and the written documents.

[¶ 14] During cross-examination on this subject, Fowler's attorney objected to questions regarding Fowler's leaving a military history question blank on his employment application to the police force. Fowler admitted on cross-examination that he had served eight months in the United States Marine Corps before being given a general discharge, which was changed several years later to an honorable discharge. Fowler's attorney objected on grounds that the inquiry was beyond the scope of direct examination. The trial court overruled this objection. When the State offered the application form as an exhibit, Fowler's attorney objected on grounds of relevancy. The trial court denied admission of the application form, stating the court need not be overburdened with exhibits and that the State had its questions and answers on the record.

[¶ 15] Following additional questioning regarding Fowler's educational and employ-

ment history, the State offered Fowler's prepared resume as an exhibit. Fowler had had difficulty recalling jobs he had held and when he had held them. Fowler's attorney objected on grounds of relevancy. The State explained Fowler's resume was offered for impeachment purposes in that it contained information contrary to Fowler's testimony. The resume was received into evidence.

[¶ 16] Although Fowler claims on appeal this evidence was improperly admitted as character evidence under SDCL 19–14–10, this issue was not raised either as grounds for objection by Fowler's attorney or as explanation of its cross-examination by the State. This Court does not address objections not raised before the trial court. "The trial court must be given an opportunity to correct any claimed error before we will review it on appeal." *State v. Henjum*, 1996 SD 7, ¶ 13, 542 N.W.2d 760, 763.

[¶ 17] SDCL 19–14–8 provides "[t]he credibility of a witness may be attacked by any party, including the party calling him." Fowler "opened the door" to the issues addressed on cross-examination at the outset of his direct testimony. Except for the objection to the question regarding his military history, Fowler did not object to questions regarding his educational and employment history until cross-examination was effectively concluded on these issues. After his testimony was on record, Fowler made two relevancy objections to the admission into evidence of his application form and his resume. The trial court denied admission of the police force application form but admitted Fowler's resume. We hold the trial court did not abuse its discretion in admitting such evidence for purposes of impeachment by contradiction after Fowler had opened the door to this cross-examination during direct examination. *See State v. Loop*, 477 N.W.2d 40, 42 (S.D.1991) (defendant opened the door to impeachment evidence on cross examination by his testimony on direct examination); *State v. Byrum*, 399 N.W.2d 334, 337–38 (S.D.1987) (extrinsic evidence of drug sale which may not be admissible under SDCL 19–14–10 was admissible to impeach by contradiction under SDCL 19–14–

after defendant opened the door to this type of rebuttal during direct examination).

[¶ 18] **2. Whether Fowler's due process rights were violated by the State's suppression of evidence and the trial court's permitting testimony from evidence not properly disclosed to Fowler?**

[¶ 19] On rebuttal, the State was permitted to introduce into evidence payroll records indicating Fowler's patrol activity and duty times during the first weeks of June 1991. Fowler objected, claiming he had never seen these records. Fowler argued the trial court's discovery order had required the State to provide the defense with documents material to the preparation of Fowler's defense that were in the State's possession. This objection was overruled following the State's assurance to the trial court that it at no time had these payroll records in its possession and that the State's intention regarding use of these records was to refute Fowler's testimony and not as part of the State's case-in-chief. From the payroll records, the State's rebuttal witness, North Sioux City police chief Skip Ensley, testified Fowler had been on duty only two hours on June 6, 1991 and that was for court duty, not patrol. Fowler had testified on direct examination that he first met Jane when he answered a loud party complaint "a couple days prior" to her own party.

[¶ 20] The State then attempted to introduce complaint cards indicating the dispatchment of North Sioux City police officers on June 8 and 9, 1991. Fowler objected to the introduction of such evidence since he had requested police records under the trial court's discovery order and had not received these complaint cards from the State. The trial court sustained the objection admonishing the State that it should have produced the records. However, the trial court permitted Ensley to testify based on his review of these excluded dispatch records. The records indicated Fowler was dispatched twice on June 8, 1991 to the Doe residence, at 9:30 p.m. and again at approximately 12:45 a.m. This supported Fowler's testimony that he had responded to two loud party complaints at the Doe residence the night of Jane's party. At no time did Fowler move for a new trial based on evidence suppressed by the prosecution.

[¶ 21] In *Brady v. Maryland,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963). Recently, we stated "[s]uppression of evidence by the prosecution goes directly to the fundamental fairness of the trial, the basic due process rights of the accused." *State v. Steele,* 510 N.W.2d 661, 665 (S.D.1994). However, the Supreme Court has also cautioned that "a rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgments." *United States v. Bagley,* 473 U.S. 667, 675, n.7, 105 S.Ct. 3375, 3380, n.7, 87 L.Ed.2d 481, 489, n.7 (1985)

[¶ 22] In *Ashker v. Solem,* 457 N.W.2d 473, 477 (S.D.1990), we set forth a four-part test for determining whether there has been a due process violation when the prosecution has suppressed evidence. If all four of these questions are answered affirmatively, the defendant's due process rights have been violated and a new trial must be granted:

1. Was the defense unaware of the evidence?

2. Is the evidence favorable to the defense?

3. Is the evidence material to the defense?

4. Did the defense make a request for the evidence?

*Id.* In applying the above four-part test, we have stated "[e]vidence is favorable where it creates a reasonable doubt that did not otherwise exist .... [and] 'material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Steele,* 510 N.W.2d at 665 (citing *Ashker,* 457 N.W.2d at 477 and quoting *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494 (addressing the standard of materiality to be applied)).

[¶ 23] We have reviewed the South Dakota and United States Supreme Court cases addressing this issue and do not find support for granting Fowler a new trial based on the prosecution's suppression of this evidence. The crime of rape in this case took place three and one half years prior to Fowler's being brought to trial. While the suppressed evidence lends support to cementing certain calendar dates, it does not alter the basic claim by Jane that she was raped by Fowler in the early morning hours following her party nor Fowler's claim that the two had consensual sexual intercourse during this same time period. The timing of the event is fixed and certain as being the early morning hours following Jane's party. Had Fowler presented an alibi defense, or identification been uncertain in this case, the suppressed evidence, which pinpointed his whereabouts on certain dates, may have become material.

[¶ 24] In *Ashker,* we cited the Eighth Circuit Court of Appeals and the United States Supreme Court as requiring "the court to be convinced, from a review of the entire record that had the evidence withheld been made available, the jury probably would have reached a different result." *Ashker,* 457 N.W.2d at 478 (citing *United States v. Peltier,* 800 F.2d 772 (8th Cir.1986), *cert. denied,* 484 U.S. 822, 108 S.Ct. 84, 98 L.Ed.2d 46 (1987) and *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494). Although credibility was a key issue in this trial, on review of the entire record, we are not so convinced a different result would have been reached.

[¶ 25] Fowler also claims the State did not disclose that it had in its possession a videotaped interview of Jane Doe prepared by the military's Office of Special Investigation. The defense learned of the videotape's existence during a deposition taken July 3, 1995 of North Sioux City's former police chief, Skip Ensley, four months after sentence had been imposed in this case.

[¶ 26] The United States Supreme Court addressed the discovery, pending appeal, of new evidence which the prosecution failed to disclose in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). In *Giglio,* the Supreme Court noted it did not "automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict.' A finding of materiality of the evidence is required under *Brady.*" 405 U.S. at 154, 92 S.Ct. at 766, 31 L.Ed.2d at 108. This Court is unaware of the contents of this taped interview, therefore it is impossible to know whether it provides any material evidence. To our knowledge, there has been no such finding made regarding the taped interview. Since the trial court has not had an opportunity to rule on any issues concerning this videotape's existence and the contents are unknown to this Court, any argument in this regard, which would be grounded in issues of due process, would be more appropriately addressed in a habeas proceeding.

[¶ 27] We affirm.[2]

[¶ 28] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

---

**2.** By affirming on this issue we do not condone the actions of the prosecutor. At best it is sloppy trial preparation and at worst it could constitute a violation of the trial court's discovery order. Were such conduct to result in a violation of a defendant's due process rights, we would have to reverse an otherwise valid conviction on unjustified prosecutorial misconduct. A criminal jury trial is a search for the truth under rules which seek fairness, not a proceeding to win at all costs including trial by ambush.