2000 SD 144

Shon SAWYER, Plaintiff and Appellee,

v.

FARM BUREAU MUTUAL INSUR-
ANCE COMPANY, an Iowa Mutual
Property & Casualty Insurance Com-
pany, Defendant and Appellant.

Nos. 21267, 21296.

Supreme Court of South Dakota.

Argued Sept. 19, 2000.

Decided Nov. 21, 2000.

Steven W. Sanford of Cadwell, Sanford, Deibert & Garry, Sioux Falls, SD, Attorneys for plaintiff and appellee.

Mark D. O'Leary, Sioux Falls, SD, Attorney for defendant and appellant.

GILBERTSON, Justice.

[¶ 1.] Defendant Farm Bureau Mutual Insurance Company (Farm Bureau) appeals from a jury verdict in favor of Plaintiff, Shon Sawyer (Sawyer). The jury awarded damages for breach of contract, bad faith, and punitive damages to Sawyer arising out of a dispute as to insurance coverage relating to the death of livestock. Farm Bureau also appeals an award of Sawyer's attorney's fees. We affirm in part and reverse and remand in part.

## FACTS AND PROCEDURE

[¶ 2.] Sawyer operates a cattle-feeding operation near Hurley, South Dakota. In June of 1995, Sawyer procured insurance from Farm Bureau through its agent, Kurtis Berndt, of Sioux Falls. This initial policy covered all his property except his livestock. In January of 1996, the policy was expanded to include livestock. The trial court found that Sawyer's livestock coverage was designated as "Special Form" as indicated on the Declarations page of the policy. Special Form is also referred to as "all-risks" in the industry, and applies to all loss except as otherwise excluded. Under Sawyer's original policy, Farm Bureau would not cover "loss to livestock or poultry caused in whole or in part: ... by smothering; [or] by freezing in blizzards or snowstorms." However, for an additional premium, Sawyer obtained an endorsement to his policy. This endorsement provided that Farm Bureau would cover "Freezing and Smothering in Blizzards or Snowstorms."

[¶ 3.] In November of 1996, 109 head of cattle died during a winter storm, defined by the parties as an "ice storm." Another 188 head died during a December blizzard. When Sawyer submitted a claim for the loss of the cattle, Farm Bureau required all the cattle to be necropsied, which is a procedure similar to an autopsy. This procedure required Sawyer to stockpile the 297 frozen carcasses in his yard, and then individually move each carcass into a building heated to 100 degrees. The carcass was left in the building to thaw, a process that took several days. Once the carcass was thawed, it was inspected to determine whether death resulted from disease rather than freezing. After inspection, the carcass was restacked outside. Farm Bureau demanded that each animal be necropsied to determine that the death was covered by the policy. It took the position that Sawyer must prove that

the animals' death resulted from "freezing or smothering in snowstorms or blizzards," as defined in the policy's endorsement before coverage would apply. Sawyer argued that because his livestock coverage was "Special Form," all losses were covered unless otherwise excluded.

[¶ 4.] Farm Bureau also refused payment on the grounds that Sawyer had not told it that he was feeding other people's cattle. It based this position on a clause in the policy that stated as follows: "We cover: Direct loss to unscheduled farm personal property owned by you, being purchased by you or rented or leased to you which is used in the operation of your farm as a farm." Farm Bureau interpreted this clause as requiring 100% ownership of the livestock by Sawyer. Sawyer did not own 100% of the livestock he was feeding. During the course of his operation, he had needed to secure additional financing. Unable to secure the necessary financing through a financial institution, he instead solicited and obtained several investors in his operation. These investments were in a variety of forms, but usually involved a partial ownership in certain livestock. At all times, Sawyer continued to provide feed, medicine and other supplies for the livestock. Sawyer was responsible for insuring the livestock. All livestock was purchased and sold in Sawyer's name. However, because Sawyer did not own 100% of the livestock, Farm Bureau denied coverage under Sawyer's policy. As a result, the parties were unable to reach a settlement and the dispute went to a jury trial on July 21, 1999.

[¶ 5.] After the close of evidence at trial, both parties moved for a directed verdict. In ruling on those motions, the trial court made several findings. It found as a matter of law that Sawyer had an ownership interest in the cattle sufficient to satisfy the requirements of the policy. In addition, it found that the coverage was "Special Form" and hence, the loss during the ice storm was covered under the policy because it was not specifically excluded.

It also found that the endorsement purchased by Sawyer eliminated the exclusion contained in the policy for death from freezing or smothering in a blizzard or snowstorm. As a result, the trial court granted Sawyer's motion for directed verdict as to the loss from the November ice storm. It also granted Sawyer's motion as to coverage for the loss resulting from the December blizzard. The question as to whether Sawyer was required to prove the cattle died during the blizzard rather than some time afterward, was reserved for the jury. As to Sawyer's bad faith claim, the trial court ruled there was clear and convincing evidence of a reasonable basis to believe there had been willful, wanton, and malicious behavior by Farm Bureau, sufficient to submit the claim to the jury.

[¶ 6.] The jury returned a verdict in favor of Sawyer awarding $500 per head for all cattle lost in the November storm and $500 per head for 175 of the 188 cattle killed in the December blizzard, for a total of $142,000. In addition, the jury awarded bad faith damages of $34,155 and punitive damages of $125,000, as well as pre-judgment interest on the breach of contract and bad faith damages.

[¶ 7.] On appeal, Farm Bureau raises five issues for our consideration. Sawyer raises two issues by notice of review.

## ANALYSIS AND DECISION

[¶ 8.] **1. Whether Farm Bureau's notice of appeal was timely so as to give this Court jurisdiction to hear the appeal.**

■ [¶ 9.] Initially we address Sawyer's contention that the appeal of Farm Bureau is not timely and the case should be dismissed for want of jurisdiction. Under SDCL 15–26A–6, an appeal must be taken within 60 days after the judgment is signed, attested, filed and notice given to the adverse party. The initial or preliminary judgment, filed on August 13, 1999, was entered with this condition, "[t]his Judgment is expressly subject to amendment, if necessary to conform to the

Court's ruling on Plaintiff's Motion for Substitution of Party Defendant dated August 10, 1999." This motion to amend was previously filed by Sawyer on August 10, 1999, requesting the court to substitute Farm Bureau Mut. Ins. Co. for the originally named defendant, South Dakota Farm Bureau Mut. Ins. Co.[1] The trial court orally granted this motion on September 16, 1999 and the order finalizing the judgment pursuant to this motion was filed on September 22, 1999.

[¶ 10.] Sawyer was the moving party on this motion. The order was significant in that it properly identified the party against whom his judgment would be enforced. As such, Sawyer will not now be heard to complain when his own motion prevented the entry of a final judgment prior to September 22, 1999 and notice of entry thereon on September 24, 1999. Therefore, the 60 day appeal period began to run from September 25, 1999[2] and Farm Bureau's notice of appeal on November 17 was timely.[3]

[¶ 11.] **2. Whether the trial court erred in failing to instruct the jury that Sawyer had to prove he owned the cattle for which he claimed money damages.**

■ [¶ 12.] At the close of evidence, the trial court determined that Sawyer did have "an ownership interest in [the] cattle." As such, the jury was instructed that "[r]egardless of whether [Sawyer] was the sole owner of [the] cattle, a part-owner of [the] cattle or was custom feeding the cattle for others, [Sawyer] had an insurable interest in the cattle sufficient to obligate [Farm Bureau] to provide coverage on the cattle for their full value." Farm Bureau requested an instruction requiring Sawyer to prove "that he owned each of the animals for which he claims money damages." The request was refused. Based upon this proposed instruction, it appears Farm Bureau interprets the term "owned" in the policy to mean "100% owned by the insured." We do not agree.

■ [¶ 13.] We review the interpretation of an insurance contract de novo. *National Sun Indus., Inc. v. S.D. Farm Bureau Ins. Co.*, 1999 SD 63, ¶ 7, 596 N.W.2d 45, 46. Whether the contract is ambiguous is also reviewed de novo. *Id.* ¶ 7, 596 N.W.2d at 46–7. We have previously stated that "[a]n insurance policy is ambiguous when it 'is fairly susceptible to two constructions.'" *Id.* When ambiguity is found, "the interpretation most favorable to the insured should be adopted." *Id.* Farm Bureau relies heavily on its interpretation of the term "owned." Yet, the term is not defined anywhere in the policy. While it is reasonable to conclude that ownership implies complete ownership to the exclusion of others, it is equally as reasonable to conclude that the term encompasses an infinite number and combinations of ownership interests so long as *some* ownership interest exists. As such, the policy is ambiguous, and the term will be construed in favor of the insured. Sawyer had at least a 25% ownership interest in the livestock that died during the storms. He is deemed to have "owned" that livestock for purposes of the Farm Bureau policy.

---

**1.** As of July 1, 1999, South Dakota Farm Bureau Mut. Ins. Co. merged with Farm Bureau Mut. Ins. Co., an Iowa mutual property and casualty insurance company. Farm Bureau Mut. Ins. Co. expressly assumed all "debts, duties, liabilities and obligations of South Dakota Farm Bureau Mut. Ins. Co." in the merger agreement. The merger was not discovered by Sawyer until after trial.

**2.** Per SDCL 15–6–6(a) the date of filing is not included. The service of the Notice of Entry was done by mail. Pursuant to SDCL 15–6–6(e), this adds an additional three days.

**3.** Farm Bureau also filed a motion for JNOV on August 20, 1999. Given the fact Sawyer's motion to substitute a party was still outstanding, the denial of the motion for JNOV by expiration of 20 days per SDCL 15–6–59(b) on September 9, 1999 is not dispositive of this issue.

[¶ 14.] This decision is in line with those from other jurisdictions that have interpreted similar terms. In *Dolan v. Welch,* the Appellate Court of Illinois found the term "ownership" in an automobile insurance policy to be ambiguous. 123 Ill. App.3d 277, 78 Ill.Dec. 675, 462 N.E.2d 794, 796–97 (1984). The Minnesota Supreme Court determined that the terms "ownership" and "owned by named insured" include any insurable interest in the described property covered by the policy. *Quaderer v. Integrity Mut. Ins. Co.,* 263 Minn. 383, 116 N.W.2d 605, 608–09 (1962). Finally, in *American Indem. Co. v. Davis,* the Fifth Circuit Court of Appeals found that the term "ownership" includes joint as well as sole ownership interests in an automobile. 260 F.2d 440, 442 (5th Cir.1958) (applying Georgia law).

[¶ 15.] In addition, there is ample evidence in the record that Farm Bureau was well aware of the fact that Sawyer would be custom feeding at his feedlot, and that as a result, he would not own 100% of all the livestock on his feedlot. At the time of application, Sawyer insured 4,000 head for $500 per head, and was charged a full premium for all 4,000 head. Three weeks after the policy went into effect, Berndt informed a Farm Bureau underwriter that Sawyer "may custom feed and plans on it." A Farm Bureau inspector reported to the underwriting division that Sawyer "d[id] some custom feeding" and he had "the impression it [was for] more than one [customer]." Additional documents produced by Farm Bureau show that the claims division was also aware that Sawyer was custom feeding. At no time after the policy went into effect, did Berndt or any other Farm Bureau personnel inform Sawyer that because of an undisclosed, internal Farm Bureau policy, he should have been insured under a different policy. Nor did any Farm Bureau personnel inform Sawyer that if he had only a partial interest in the livestock that any claims would be pro rated accordingly. Instead, Farm Bureau continued to collect the full premium on 4,000 head of cattle, insured

for $500 per head. The trial court's instruction as to ownership is affirmed.

[¶ 16.] **3. Whether the trial court erred in not granting a directed verdict for Farm Bureau on the issue of bad faith.**

[¶ 17.] The trial court's decision not to grant a directed verdict is reviewed under the abuse of discretion standard. "The trial court's decisions and rulings on such motions are presumed correct and this Court will not seek reasons to reverse." *Martinmaas v. Engelmann,* 2000 SD 85, ¶ 20, 612 N.W.2d 600, 606. Stated another way, failure to grant a directed verdict will not be overturned unless reasonable minds could not differ as to the absence of bad faith.

[¶ 18.] The test for a bad faith cause of action against an insurer was recently reiterated in *Stene v. State Farm Mut. Auto. Ins. Co.,* 1998 SD 95, ¶ 19, 583 N.W.2d 399, 403. There, this Court stated:

> [F]or proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for denial, implicit in that test is *our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.*

*Id.* (quoting *Walz v. Fireman's Fund Ins. Co.,* 1996 SD 135, ¶ 7, 556 N.W.2d 68, 70) (alterations in original). "An insurance company may, however, challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Id.* Our function here is not to determine whether we believe bad faith existed, rather whether evidence exists from which reasonable

minds could find bad faith. We hold that reasonable minds could find that Farm Bureau acted in bad faith and that the trial court did not abuse its discretion in denying Farm Bureau's motion for directed verdict.

[¶ 19.] Evidence of Farm Bureau's bad faith includes a tape-recorded conversation between the insurance adjuster for Farm Bureau, Wayne Nielsen, and Farm Bureau's Senior Property Supervisor, Michael McMahon. During this conversation, Nielsen and McMahon discussed strategies to make Sawyer appear fraudulent, false accusations that Sawyer had committed arson, false accusations of extra-marital affairs involving Sawyer's wife, as well as Farm Bureau's exposure under the policy and strategies to avoid paying the full loss incurred. In addition, Nielsen expressed reservations about: "having too much on paper if we go to discovery.... I just wonder how much at risk or how much do we get our own tit in a wringer by having too much on paper. You know. You know we don't want to create a bad faith thing...."[4]

[¶ 20.] Further evidence of Farm Bureau's bad faith includes the fact that Farm Bureau never attempted to count or weigh the dead livestock, despite the fact that it disputed both the number and weight of the dead livestock. Finally, Sawyer was left with a mound of 297 dead cattle in his yard for several months, incurred costs associated with the necropsy of each animal, and over four and a half years later has not been paid a dime on his claims. From this evidence reasonable minds could differ whether Farm Bureau acted with a reasonable basis for denial of policy benefits and with reckless indifference to facts. The trial court's denial of Farm Bureau's motion for directed verdict on the issue of bad faith was within its discretion.

[¶ 21.] **4. Whether the trial court erred in finding clear and convincing evidence of a reasonable basis to believe there had been willful, wanton, or malicious conduct by Farm Bureau so as to submit the issue of punitive damages to the jury.**

[¶ 22.] "The determination by the trial court that there was a reasonable basis to submit the punitive damages issue to the jury will not be disturbed absent a clearly erroneous interpretation of the evidence." *Kjerstad v. Ravellette Publications, Inc.*, 517 N.W.2d 419, 425 (S.D.1994). Farm Bureau relies upon its argument that it had valid, good faith disputes as to the ownership of the dead cattle, the number of dead cattle, and the value of each, and therefore its conduct was not willful, wanton or malicious. As to the number and value of the cattle, Farm Bureau never attempted to count or weigh the dead cattle. In addition, it relied upon a strict reading of an undefined and ambiguous term in a policy written by its own employees, with the knowledge that ambiguous policy terms are construed against the insurer.

[¶ 23.] In *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 761 (S.D. 1994), this Court found that punitive damages were warranted when State Farm refused to settle a claim under Isaac's uninsured motorist coverage without a release of Isaac's bad faith claim against it. Punitive damages were also awarded in *Harter v. Plains Ins. Co., Inc.*, 1998 SD 59, ¶ 37, 579 N.W.2d 625, 634. In that case, Plains (as Harter's insurer) intervened in a separate lawsuit between Harter and the defendant in an auto accident.

---

4. It is clear from this conversation that Farm Bureau did not consider the issue of ownership to be determinative under the policy. Multiple methods of avoiding or minimizing the claim were discussed, however, the issue of ownership never came up. If, as Farm Bureau now claims, they could reasonably deny coverage on the ownership issue, the tactics discussed during the phone call would have been unnecessary. There would have been no need to worry about creating a "bad faith thing" if Farm Bureau actually believed that they could deny coverage because Sawyer did not own 100% of the insured animals.

As intervenors, Plains requested that Harter's claim be dismissed even though the defendant had admitted liability. The purpose behind such a request was to protect Plains from underinsured motorist liability as it was aware that the defendant was judgment proof.

[¶ 24.] When the evidence, including that discussed regarding the bad faith claim, is viewed in light of the precedent discussed, Farm Bureau has not shown that the trial court was clearly erroneous in submitting punitive damages to the jury.

[¶ 25.] **5. Whether the trial court abused its discretion in admitting Sawyer's exhibits in mass.**

[¶ 26.] Evidentiary rulings made by a trial court are presumed to be correct, and are only reversed if there is an abuse of discretion. *State v. Fowler*, 1996 SD 78, ¶ 12, 552 N.W.2d 92, 94 (citations omitted). At the beginning of trial, the court received Sawyer's exhibits # 1–41 to facilitate efficiency and shorten the trial. The exhibits were all produced by Farm Bureau during discovery and were admitted under the business records exception found in SDCL 19–16–10. That statute provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or other qualified witness*, is not excluded by § 19–16–4, even though the declarant is available as a witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

*Id.* (emphasis added). Despite the emphasized language above, Sawyer's exhibits were admitted under this exception with-

out any foundation testimony from their custodian or any other qualified witness. This is clearly a violation of the requirements specified in SDCL 19–16–10. *State v. Brown*, 480 N.W.2d 761, 764 (S.D.1992). Therefore, the trial court abused its discretion in admitting the exhibits into evidence.

[¶ 27.] "However, 'the admission of documentary exhibits does not warrant reversal absent a showing that substantial rights of the party were affected. The burden of demonstrating that such rights were affected rests with the party asserting error.'" *Brown*, 480 N.W.2d at 764 (citations omitted). Farm Bureau has not specified any substantial rights that were affected by the admission of these documents, beyond its bare assertion that the admission "affected a substantial right of the defendant to mount a defense." While we share Farm Bureau's concern regarding the apparent lack of compliance with the rules of evidence by the trial court in this instance, Farm Bureau's aforementioned assertion does not overcome the burden that it bears.

[¶ 28.] **6. Whether the trial court abused its discretion when it awarded attorney's fees to Sawyer.**

[¶ 29.] SDCL 58–12–3 provides in relevant part that:

> In all actions or proceedings hereafter commenced against any . . . insurance company . . . on any policy . . . of insurance, if it appears from the evidence that such company . . . *has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause*, . . . the trial court and the appellate court, shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs. . . .

*Id.* Before attorney's fees may be awarded under this section, the trial court must find "that the insurance company refused to

pay the full amount of the insured's loss and that said refusal was either vexatious or without reasonable cause." *Brooks v. Milbank Ins. Co.,* 2000 SD 16, ¶ 17, 605 N.W.2d 173, 178 (citations omitted). The jury's "finding of bad faith on the part of an insurance company does not mean 'ipso facto' that its conduct was vexatious or without reasonable cause." *Isaac,* 522 N.W.2d at 763. These findings involve findings of fact and as such will not be reversed unless clearly erroneous. *Brooks,* 2000 SD 16, ¶ 17, 605 N.W.2d at 178.

[¶ 30.] In ruling upon Sawyer's motion for attorney's fees, the trial court made the following written findings of fact as to Farm Bureau's behavior on October 26, 1999.

> It is clear from the evidence in this case that the conduct of Farm Bureau was "vexatious and without reasonable cause." . . . The evidence clearly shows that Farm Bureau and/or its agents repeatedly denied, minimized and attempted to discourage the claims submitted by the Plaintiff in this case.

> [The phone] conversation [between Nielsen and McMahon] includes attempts to undervalue Plaintiff's losses, discussions of how to make Plaintiff appear fraudulent, concerns about the need to "minimiz[e] paper" in case of discovery and the contemplated use of an allegation that Plaintiff's wife was committing adultery. The taped conversation shows specifically how far Farm Bureau and its agents were willing to go to prevent paying the entire amount of the Plaintiff's losses.

> The evidence also shows that Farm Bureau failed to conduct a good faith investigation and evaluation of the Plaintiff's claims. Farm Bureau failed to count and weigh the dead animals . . . and to provide an appropriate or acceptable means of valuing the losses incurred by Plaintiff.

In *Eldridge v. Northwest G.F. Mut. Ins. Co.,* 88 S.D. 426, 221 N.W.2d 16, 21 (S.D.

1974) the trial court found that "the investigation and adjustment of plaintiff's claim by defendant's agent was incomplete and insufficient" when the agent did not even visit the site of the loss after a second storm to assess damage to the plaintiff's roof. Based on those findings, this Court affirmed the trial court's grant of attorney's fees. *Id.* An award of attorney's fees was affirmed in *Isaac* when the trial court found that State Farm had delayed its investigation, settlement and evaluation for years, finally refusing to pay any amounts due without a release of any bad faith action against it. 522 N.W.2d at 763. More recently, this Court affirmed an award of attorney's fees in *Brooks,* 2000 SD 16, ¶ 19, 605 N.W.2d at 179. In that case, the insurance company refused to pay the claim because of a confession that it coerced from the insured's tenant under threat of criminal prosecution, attempting to implicate the insured in a conspiracy to defraud the insurer. *Id.* ¶ 18. The trial court found that the insurer's refusal to pay was vexatious and without reasonable cause. Those findings were affirmed by this Court. *Id.* ¶ 19. In light of this case law and the record before us, we cannot say that the trial court's findings that the actions of Farm Bureau were "vexatious and without reasonable cause" were clearly erroneous.

[¶ 31.] Pursuant to SDCL 58–12–3, attorney's fees are allowed only in an action against an insurer based upon the policy. Sawyer's bad faith claim against Farm Bureau is "not an action against an insurance company on a policy of insurance within the contemplation of SDCL 58–12–3." *Isaac,* 522 N.W.2d at 763 (citations omitted). Therefore, those attorney's fees relating to the bad faith claim against Farm Bureau, as opposed to the contractual claim should have been excluded. It is not clear from the record whether the trial court included attorney's fees for the bad faith claim in its award to Sawyer. Therefore, we reverse and re-

mand for a determination of attorney's fees in accordance with this decision.

**[¶ 32.] 7. Whether the trial court erred in denying Sawyer's motion for judgment notwithstanding the verdict.**

■ [¶ 33.] The trial court's decision to grant or deny a motion for judgment notwithstanding the verdict will only be overturned for an abuse of discretion. *Martinmaas*, 2000 SD 85, ¶ 20, 612 N.W.2d at 600, 606. Sawyer argues that its motion should have been granted, directing coverage for all loss resulting from the December storm. The trial court found that the endorsement purchased by Sawyer eliminated the exclusion against death from freezing or smothering in a blizzard or snowstorm found in the policy. Therefore, Sawyer argues, all livestock deaths were covered under the Special Form ("all-risks") coverage. The basis of Sawyer's argument ·is that the jury award does not provide coverage for thirteen of the cattle that died as a result of the December storm. This is determined by dividing the jury verdict of $87,500 by the value of the cattle used by the jury ($500). That would equate to 175 cattle that the jury determined were covered by the policy, leaving 13 dead cattle not covered.

■ [¶ 34.] Despite the fact that the endorsement eliminated any exclusion for death by freezing or smothering, only those animals owned by Sawyer are covered by the policy. Even given the ambiguity of the term as discussed above, Sawyer must have *some* ownership in the cattle. Sawyer admitted in his testimony that he did not have any ownership interest in at least two of the cattle. The jury was also allowed to determine which cattle deaths were attributable to the December blizzard. The jury found that Sawyer had an ownership interest in only 175 of the cattle or that only 175 died in the storm or a combination thereof. After reviewing the testimony and evidence in the light most favorable to the verdict, we find that there is sufficient evidence to support the jury's verdict.

[¶ 35.] Affirmed in part, reversed and remanded in part.

[¶ 36.] SABERS and KONENKAMP, JJ., concur.

[¶ 37.] MILLER, C.J., and AMUNDSON, J., dissent.

MILLER, Chief Justice (dissenting).

[¶ 38.] For reasons set forth below I would dismiss the appeal as untimely. I disagree with the majority's holding on that issue.

[¶ 39.] The majority holds that Farm Bureau timely filed its notice of appeal because the judgment was not final until September 25, 1999. In so holding, it incorrectly applies SDCL 15–26A–6.

[¶ 40.] The record clearly establishes that the trial court entered the judgment on August 13, 1999. Farm Bureau timely renewed its JNOV motion on August 20, 1999. The trial court's failure to rule on the parties' JNOV motions within twenty days (or enter an order extending such time for ruling) resulted in the denial of the motions on September 9, 1999 under the clear language of SDCL 15–6–50(b). Although the majority opinion inexplicably and incorrectly dismisses this point in footnote 3 as not dispositive, SDCL 15–26A–6 dictates otherwise. Accordingly, the sixty-day period began to run on September 10, 1999 not September 25, 1999 as erroneously asserted by the majority. SDCL 15–26A–6

[¶ 41.] The majority states that "an appeal must be taken within 60 days after the judgment is signed, attested, filed and notice given to the adverse party," under SDCL 15–26A–6. This is true, however that only applies when the trial court acts within the twenty-day period prescribed in the statute or the extension it has granted to itself. That is not the case here.

[¶ 42.] Farm Bureau tendered the trial court an order extending the time for its

determination of the motions, but it did not enter the order. Thus, the trial court's order entered on September 22, 1999 is untimely and a nullity because it was not entered within the parameters of the statute. *Bedney v. Heidt,* 1998 SD 50, ¶¶ 12–13, 578 N.W.2d 570, 572.

[¶ 43.] SDCL 15–26A–6 specifically speaks to the circumstance before this Court. It states in pertinent part:

> The running of the time for filing a notice of appeal is terminated as to all parties by a timely motion filed in the circuit court by any party pursuant to § 15–6–59 or § 15–6–50(b), or both, and the full time for appeal fixed by this section commences to run and is to be computed from the attestation and filing of an order made pursuant to such motion *or if the circuit court fails to take action on such motion or fails to enter an order extending the time for taking action on such motion within the time prescribed, then the date shall be computed from the date on which the time for action by the circuit court expires.*

SDCL 15–26A–6 (emphasis added). The statute clearly applies to this case and mandates that the sixty days began to run on the day the trial court's time for action expired, specifically September 9, 1999. Thus, Farm Bureau's notice of appeal filed on November 17, 1999 is untimely because the sixty-day period expired on November 8, 1999. The majority simply ignores the portion of SDCL 15–26A–6 quoted above, which clearly dictates the outcome in this case, choosing instead to rely on the inapplicable portion of the statute.

[¶ 44.] Furthermore, although Farm Bureau claims to have been misled by Sawyer's cooperation in scheduling the motion hearing outside the twenty-day period for trial court action, a letter from Farm Bureau's counsel belies its claim. The August 24, 1999 letter written to the trial court shows that Farm Bureau understood the statutory timeframes. The letter states in pertinent part:

2. *Defendant's Motion for Judgment n.o.v., or in the alternative, Motion for New Trial.*

This motion has been scheduled for a hearing before you on September 8, 1999, at 3:30 P.M. I advised the court in my original cover letter that Defendant did not feel oral argument on this Motion was necessary. In cooperation with Steve Sanford and Clyde, and in your absence, we set the Motion for hearing should *the court* believe further argument on the issues would be helpful. Based upon the date of filing of the Motion the court must file its Order not later than September 9, 1999. If no order is filed the Motions are deemed to be denied. The court may extend the date for filing of its order by twenty (20) days should the court find there is good cause to extend the deadline. For your convenience I am enclosing an order extending the deadline should the court want more time to consider the motions....

3. *Plaintiff's Motion for Judgment n.o.v.:*

Plaintiff's Motion for Judgment n.o.v. is set for hearing on September 8, 1999 at 3:30 P.M. Defendant intends to oppose this motion, therefore, absent the court extending the deadline for ruling on Judgment n.o.v. it will be necessary to have the hearing on September 8th unless the court advises counsel that she intends to rule based upon written submissions. Defendant will serve and file a written response. Defendant is not requesting oral argument, however, we will appear and argue should the court believe it will be helpful. **If the court extends the deadlines we could argue all Judgment n.o.v. motion's [sic] on the 16th.**

This letter clearly shows that Farm Bureau fully understood the statutory timeframes affecting any appeal it may have wished to take. Farm Bureau should not now be allowed to complain when it is clear that it was not misled by any action of

Sawyer and fully understood the statutes governing its right to appeal.

[¶ 45.] Therefore, under clear and settled law, Farm Bureau's appeal should be dismissed as untimely.

[¶ 46.] AMUNDSON, J., joins this dissent.